COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: February 23, 2018
Date Decided: February 28, 2018

John M. Seaman, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Richard P. Rollo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re:  *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*
C.A. No. 2017-0708-JRS

Dear Counsel:

On February 1, 2018, the Court issued an oral ruling (the "Ruling") granting

Plaintiff, REJV5 AWH Orlando, LLC's, Amended Motion for Partial Judgment on

the Pleadings (the "Motion") as to Counts I, II, III and V of the Verified First

Amended Complaint (the "Complaint"), and reserving judgment on Count IV.[1]  The

Court also granted Defendant, AWH Orlando Member, LLC, leave to amend its

---

[1] Dkt. 93; Dkt. 76.  Count I seeks specific performance; Count II seeks various declaratory judgments regarding the parties' contractual rights; Count III seeks injunctive relief; Count IV seeks attorney's fees and Count V seeks relief for breach of contract.  Dkt. 20 at 14–21.

Amended Answer and Counterclaim ("Amended Answer") to address certain deficiencies in its pleading identified in the Ruling.[2] Rather than amend, Defendant filed the Application for Certification of an Interlocutory Appeal or, Alternatively, For Entry of Partial Final Judgment Pursuant to Rule 54(b) (the "Application") *sub judice* on February 12, 2018.[3] Plaintiff filed its opposition on February 22, 2018, and Defendant filed a reply on February 23, 2018.[4] For the reasons that follow, the Application is DENIED.

Thus far, this litigation has proceeded on an expedited schedule. Plaintiff filed its initial complaint on October 3, 2017.[5] I granted the parties' stipulation governing expedited briefing of Plaintiff's motion for judgment on the pleadings on November 17, 2017.[6] Plaintiff amended its complaint on November 21, 2017.[7]

---

[2] Dkt. 93 at 21–23; Dkt. 76.

[3] Dkt. 78.

[4] Dkt. 89; Dkt. 91.

[5] Dkt. 1.

[6] Dkt. 19.

[7] Dkt. 20.

I granted a *Status Quo* Order on November 22, 2017.[8]  Defendant answered the complaint that same day.[9]  Plaintiff initially filed a motion for judgment on the pleadings as to the Complaint on December 4, 2017, but subsequently amended that motion to conform to the Defendant's Amended Answer, which was filed on December 12, 2017.[10]  The parties presented argument on the Motion on January 22, 2018, and in keeping with the expedited schedule that has governed this litigation, the Court issued the Ruling on February 1, 2018.[11]

The parties' dispute centers on the Limited Liability Agreement entered into by and between Defendant and Plaintiff's predecessor-in-interest on May 19, 2015 (the "LLC Agreement").[12]  The LLC Agreement contemplates a venture by which the parties will pursue a hotel re-development project (the "Project").  Plaintiff argues the LLC Agreement grants it an unqualified right to remove Defendant as

---

[8] Dkt. 23.

[9] Dkt. 26.

[10] Dkt. 32; Dkt. 36; Dkt. 37; Dkt. 78.

[11] Dkt. 72; Dkt. 77; Dkt. 93.

[12] Dkt. 47, Ex. A to Opening Br. in Supp. of Pl.'s Am. Mot. for Partial J. on the Pleadings.

Manager if Defendant fails to complete the Project by a designated Completion Deadline.[13] Defendant disagrees and relies on several affirmative defenses raised in the Amended Answer to support an argument that Plaintiff cannot remove Defendant as Manager when Plaintiff's own conduct causes Defendant's failure to complete the Project by the Completion Date.

In the Ruling, I held that Plaintiff is entitled to remove Defendant as Manager of the Project under the express terms of the LLC Agreement. I also granted Defendant leave to amend the Amended Answer to plead that Plaintiff's violation of the implied covenant of good faith and fair dealing should prevent it from exercising its removal rights.[14] As noted, Defendant has opted to forego any amendments in favor of filing the Application.

## I.  Certification of an Interlocutory Appeal

Delaware Supreme Court Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by [the Delaware Supreme]

---

[13] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the LLC Agreement.

[14] Dkt. 93 at 22.

Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment." Instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[15] For this reason, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[16] When certifying an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[17]

---

[15] Supr. Ct. R. 42(b)(ii).

[16] *Id.*

[17] Supr. Ct. R. 42(b)(iii).

The existing *Status Quo* Order maintains Defendant as the Manager pending the resolution of this expedited litigation.[18]  The Court is scheduled to hear argument on the parties' cross-motions for summary judgment relating to unadjudicated aspects of this dispute on April 5, 2018.[19]  The litigation is active and ongoing and the parties show no signs of easing off the gas pedal.  What Defendant proposes now is a piecemeal approach to the litigation that will not advance the interests of justice but will increase costs and burdens.[20]  Moreover, as discussed below, it is clear that the seven appeal issues (each an "Appeal Issue" and collectively, the "Appeal Issues") that Defendant raises do not meet the strictures of Delaware Supreme Court Rule 42 to warrant certification of an interlocutory appeal.[21]

---

[18] Dkt. 23.  *See also* Dkt. 41 at 37–41.

[19] Dkt. 61; Dkt. 80.

[20] *Krahmer v. Christie's Inc.*, 2006 WL 4782303, at *1 (Del. Ch. June 15, 2006) (denying certification upon noting that "[c]ertification would likely result in the piecemeal appeal of factually and legally related issues and would be contrary to the interest of justice and the orderly procession of matters before this court.").

[21] Specifically, the Appeal Issues are: (1) whether the Court correctly interpreted and applied the prevention doctrine; (2) whether the Court correctly decided the pleading requirements to state an implied covenant claim; (3) whether the Court correctly interpreted certain provisions of the LLC Agreement; (4) whether the Court correctly interpreted LLC Agreement Section 10.1; (5) whether the Court correctly applied its interpretation of

### A.  The Court's Ruling on the Prevention Doctrine

The Defendant argues that the Court improperly construed and applied the so-called "prevention doctrine."[22]  Whether true or not, this aspect of the Ruling does not justify interlocutory review.  The Ruling did not extend or restrict the prevention doctrine under Delaware law but rather simply applied the doctrine to the facts as pled and to the contractual language at issue.  Specifically, the Court held that the express terms of the LLC Agreement defined those instances where the contractual bases for removal of the Manager would account for, or would be conditioned upon, the reasons why the Manager was unable to perform as required to avoid removal.  Removal based on failure to complete the project by the Completion Date is clearly unconditional.[23]  Accordingly, applying the clear terms of the parties' agreement,

---

Section 10.1; (6) whether the Court correctly adjudicated the issue of alleged routine delays by Plaintiff; and (7) whether the Court erroneously determined an issue of waiver.  Dkt. 78 ¶ 11.

[22] "If a promisor prevents or hinders the occurrence or fulfillment of a condition to the duty of performance, the condition is excused. . . .  The prevention doctrine thus operates as an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs."  13 *Williston on Contracts* § 39:4 (4th ed.).

[23] "[Plaintiff] may, by written notice to [Defendant], remove the Person acting as Manager should any of the following events occur (each a "Removal Event"): . . . (vi) the

the Court determined that the prevention doctrine did not apply.[24] This holding

neither "determine[d] a substantial issue" nor "established a legal right" under

Supreme Court Rule 42(b).

## B. The Court's Construction of the LLC Agreement

As a general matter, issues of contract interpretation are not worthy of

interlocutory appeal.[25] The third, fourth and fifth Appeal Issues identified in the

Application all address this Court's construction of discrete provisions of the LLC

Agreement. Accordingly, these three issues do not meet any Rule 42(b)(iii) criteria

and are not fit for interlocutory appeal.

---

Completion Date has not occurred on or before September 1, 2017; . . .
LLC Agreement § 6.5(a)(vi).

[24] Dkt. 93 at 10–11 (finding that Plaintiff's unconditional right of removal cannot be altered by the prevention doctrine).

[25] *Lexington Ins. Co. v. Almah LLC*, 167 A.3d 499 (Del. 2016) (TABLE) (denying interlocutory appeal upon noting the "dispute turn[s] on issues of contract interpretation"); *Robino-Bay Court Plaza, LLC v. West Willow-Bay Court, LLC*, 941 A.2d 1019 (Del. 2007) (TABLE) (declining to grant interlocutory appeal of this court's construction of the operative contract); *McKnight v. USAA Cas. Ins. Co.*, 872 A.2d 959 (Del. 2005) (TABLE) (declining interlocutory appeal where "the trial court applied well-established principles of contract interpretation and thus the case did not involve a matter of first impression"); *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 1830476, at *2 n.3 (Del. Ch. Apr. 20, 2015) ("The Court's contract interpretation, even if wrong, would not seem to warrant interlocutory appeal.").

While Defendant seeks to characterize its sixth Appeal Issue as something other than a challenge to the Court's construction of the LLC Agreement, the characterization does not reflect the essence or impact of the Ruling. Specifically, Defendant argues that the Court erroneously determined as a matter of law that certain delays in the progress of the Project attributable to Plaintiff were "routine."[26] The Court made no such finding. The Ruling states the delays did not appear to extend beyond those contemplated by the approval regime set forth in the LLC Agreement, not that they were routine (or not routine).[27] Here again, the Court was simply interpreting what it viewed as clear and unambiguous terms of the LLC Agreement. This exercise in contract construction does not implicate any of the criteria in Rule 42(b)(iii) to warrant interlocutory appeal.

---

[26] Dkt. 78 ¶ 11(F).

[27] Dkt. 93 at 17 ("At the outset, I have to note that Plaintiff's implied covenant position raises red flags since it is difficult to conceive that sophisticated parties engaged in the business of commercial construction, which is inherently fluid, failed to contemplate delays, especially in light of the *approval mechanism instituted in Section 6.1(c) through (d)* . . .") (emphasis added).

### C. The Court's Refusal to Find Waiver

Defendant urged the Court to find that certain of Plaintiff's arguments had not been properly raised in the briefs and were, therefore, waived. The Court disagreed. The determination of whether *vel non* an argument is waived is highly contextual and ultimately a matter within this Court's discretion; as such, it is classically *not* an issue for interlocutory appeal.[28]

### D. The Court's Holding Regarding the Implied Covenant

Finally, the second Appeal Issue, which Defendant attempts to tie to Rule 42(b)(iii)(B),[29] posits that the Court's "holding that bad faith is necessary to state an implied covenant claim conflicts with other Court of Chancery decisions."[30] Specifically, Defendant asserts the Ruling requires Defendant to plead a culpable

---

[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 2012 WL 3201139, at *14 n.112 (Del. Ch. Aug. 7, 2012) (noting that although "as a general matter, arguments not briefed are deemed waived, this is a principle of discretion"); *Monsanto Co. v. Aetna Cas. & Surety Co.*, 1991 WL 215621, at *1 (Del. Ch. Sept. 25, 1991) (ORDER) (denying certification of interlocutory appeal of "[o]rders merely reflect[ing] my discretionary decision to refuse to entertain an application for injunctive relief which I concluded was meritless on its face in light of prior binding rulings").

[29] Dkt. 78 ¶ 13.

[30] *Id.* ¶¶ 11(b), 13.

mental state in order to plead bad faith sufficient to invoke the implied covenant

defense.[31]  Once again, Defendant has mischaracterized the Ruling.  What the Court

actually observed and held is that:

> [O]ur Supreme Court held that the Court should view whether the covenant of good faith has been breached through the lens grounded by our entity law, which is to say that the [Defendant] must plead facts that support a reasonable inference that the [Plaintiff] failed to act in a manner that it reasonably believed was in the best interests of the Company.[32]

"[T]he use of the qualifier 'reasonably' imposes an objective standard of good

faith."[33]  The Court observed that even under the clarified good faith standard, "a

breach of the implied covenant of good faith 'implicitly indicates bad faith

conduct.'"[34]  Therefore, when one fails to act in a manner that one reasonably

---

[31] *Id.* ¶ 13.

[32] Dkt. 93 at 18.  *See Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 246 (Del. 2017) (holding that the implied covenant should not be measured against a standard that would require a plaintiff to plead a version of bad faith "that ruled out all legitimate explanations for the defendants' actions except for bad faith—a pleading hurdle borrowed from one of the most demanding corporate law standards, that of 'waste'").

[33] *Brinckerhoff*, 159 A.3d at 260.

[34] Dkt. 93 at 18–19 (quoting *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009)).

believed, or should have believed, was in the best interest of the Company, one is failing to act in good faith and, consequently, one is acting in bad faith. The Ruling recognizes that good faith and bad faith are two sides of the same coin. Contrary to Defendant's characterization, the Ruling did not (and does not) require Defendant to plead a culpable mental state (*i.e.* the waste standard) to state a claim for breach of the implied covenant.[35] Stated differently, the Court did not hold Defendant to the bad faith standard struck down in *Brinckerhoff v. Enbridge Energy Co., Inc.*[36] To the contrary, the Court acknowledged that Delaware's pleading standard for the implied covenant requires pled facts that support a reasonable inference that a party failed to act in a manner reasonably believed to be *in the best interests of the Company.*[37]

---

[35] Notably, Plaintiff independently came to the conclusion that Defendant mischaracterized the Ruling regarding pleading the implied covenant of good faith. *See* Pl.'s Opp. to Def.'s Appl. for Certification of Interlocutory Appeal and for Entry of Partial J. Pursuant to R. 54(b), Dkt. 89 ¶¶ 27–28.

[36] 2016 WL 1757283 (Del. Ch. Apr. 29, 2016), *rev'd*, 159 A.3d 242 (Del. 2017).

[37] Dkt. 93 at 18 (emphasis added).

Under these circumstances, I cannot certify that the likely benefits of interlocutory review outweigh the probable costs. Accordingly, the application for certification of an interlocutory appeal under Rule 42 is refused.

## II. Partial Final Judgment

Court of Chancery Rule 54(b) provides this Court with discretion to enter a final judgment on individual claims if the party seeking that relief is able to demonstrate certain procedural imperatives.[38] The Court should exercise its discretion to grant a partial final judgment sparingly, however, and should reserve such relief for the infrequently "harsh case."[39] The reluctance to enter partial final judgments is a product of Delaware's policy against piecemeal litigation.[40] Therefore, to demonstrate that a partial final judgment is warranted, the requesting party bears the burden to show that: (1) the action involves multiple claims or parties;

---

[38] *In re Tri-Star Pictures, Inc. Litig.*, 1989 WL 112740, at *1 (Del. Ch. 1989).

[39] *Id.*

[40] *Hill Int'l, Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 36 (Del. 2015) ("In addressing the third element—whether there is just reason for delaying the appeal—the Court of Chancery exercised appropriate caution in taking note of our long established policy against piecemeal appeals. We reiterate our policy against piecemeal appeals . . .").

(2) at least one claim or the rights and liabilities of at least one party has been finally decided; and (3) there is no just reason for delaying an appeal.[41]  Defendant has met its burden as to the first two requirements, but has failed to meet its burden as to the third requirement.[42]

The Ruling adjudicated certain contract interpretation issues relating to the LLC Agreement, particularly Section 6.5(a)(vi).  It did not, however, adjudicate damages and attorneys' fees associated with the Motion.  Nor did it address other issues relating to the LLC Agreement that have been raised in the counterclaim.[43]  Once these outstanding claims and issues have been resolved, the parties may seek to appeal those rulings.  Bearing in mind Delaware's clear policy against piecemeal litigation, I am satisfied that the rulings should be appealed together, not in a

---

[41] *Id.*

[42] Plaintiff does not oppose Defendant's motion for a Rule 54(b) partial final judgment, but the parties substantially disagree as to the form of order.  *Compare* Dkt. 89 ¶¶ 3–6, 17–22 *with* Dkt. 91.  *See also* Dkt. 91, Ex., at ¶¶ 3–4.

[43] *See, e.g.*, Dkt. 36; Dkt. 37.

sequence of Defendant's choosing.[44]  Accordingly, Defendant's motion for a partial

final judgment under Rule 54(b) is denied.

      **IT IS SO ORDERED.**

                    Very truly yours,

                    */s/ Joseph R. Slights III*

---

[44] *Kent Cty. Levy Ct. v. Upfront Enters.*, 935 A.2d 256, n.1 (Del. 2007) (TABLE) ("[T]he policy underlying the final judgment rule is one of efficient use of judicial resources through disposition of cases as a whole, rather than piecemeal. . . .  The policy against piecemeal litigation applies forcefully to this ongoing and evolving litigation.").